IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

DAMIEN FORD,
ADC #143035                                                                                  PLAINTIFF

V.                      CASE NO. 5:17-CV-122-BRW-BD

CORRIE FERRELL                                                                          DEFENDANT

## RECOMMENDED DISPOSITION

**I.      Procedure for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Judge Billy Roy Wilson. Any party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for your objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive any right to appeal questions of fact.

**II.     Discussion:**

   A.    Background

Plaintiff Damien Ford, an Arkansas Department of Correction ("ADC") inmate, filed this civil rights case claiming that Defendants violated his rights by abusing the ADC's disciplinary system. The only remaining claim, however, is against Sgt. Corrie Ferrell. Mr. Ford alleges that, after he wrote grievances against Defendant Ferrell, she

retaliated by writing false disciplinary charges against him.[1] (#1) Defendant Ferrell has filed a motion for summary judgment. (#59) Mr. Ford has responded (#63), and the motion is ripe for decision.

      B.      Standard

In a summary judgment, the court rules in favor of a party before trial. Defendant Ferrell is entitled to summary judgment if the evidence shows that there is no genuine dispute as to any fact that is important to the outcome of the case. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986). If there are genuinely disputed facts that are important enough to make a difference in how the case is decided, the Court will view those facts in a light most favorable to the Mr. Ford, provided the record does not contradict his version of the facts so as to render that version unbelievable to any reasonable juror. *O'Neil v. City of Iowa City, Iowa*, 496 F.3d 915, 917 (8th Cir. 2007).

      C.      Facts

During all relevant times, Mr. Ford was incarcerated at the Delta Regional Unit of the ADC and was assigned to hoe squad. (#59-1, p.12) According to her affidavit, Defendant Ferrell was the field sergeant at all times relevant to this case. (#59-2, p.1-2) Her job duties included supervising the hoe squad and, consequently, recommending inmates on her squad for an elevation in class and a change in job assignments or, conversely, a reduction in class. (#59-2, p.1-2)

---

[1] All other claims have been dismissed. (#25)

On April 21, 2014, Defendant Ferrell ordered several inmates to move from hoe-squad one to hoe-squad four in order to even the number of inmates working on each squad. (#59-2, p.2; #64, p.3) At the time, Mr. Ford was assigned to squad one. (#59-1, p.12)

After Defendant Ferrell ordered specific inmates to change to squad four, she realized that Mr. Ford had moved to squad four, even though she had not ordered him to do so. (#59-2, p.2-3) Defendant Ferrell wrote Mr. Ford a disciplinary on April 21, 2014, charging him with violating ADC rules by being out of his assignment place, interfering with a count, and failure to obey an order. (#59-2, p.3, 88; #64, p.3)

Mr. Ford disputes Defendant Ferrell's assertion that she did not order him to change squads and states that she did, in fact, call his name and order him to change squads. (#64, p.3)

On April 28, 2014, seven days later, Mr. Ford filed a grievance against Defendant Ferrell, complaining that she had discriminated against him based on his race by failing to recommend him for a job change. (#59-1, p.91; #64, p.3) It is undisputed that Defendant Ferrell told Mr. Ford that she would not recommend him for a job change until she knew more about his work habits. (#59-1, p.57, 91, #59-2, p.3)

On April 29, 2015, Mr. Ford attended his disciplinary hearing before disciplinary officer Keith Waddle on the charge that he had changed squads without being told to do so. (#59-11) At the hearing, Mr. Ford conceded that, while he thought Defendant Ferrell

3

had called his name to change squads, she might have said another inmate's name.[2] (#59-1, p.21) After considering Mr. Ford's statement of record and Defendant Ferrell's report, Officer Waddle found Mr. Ford guilty of three rule violations. (#59-11; #64, p.3) As a result, Mr. Ford received a reduction in class and a twenty-day restriction of his commissary, phone, and visitation privileges. (#59-1, p.23) Mr. Ford did not appeal this disciplinary conviction. (#59-13, p.4)

On May 2, 2014, Mr. Ford was working on the hoe squad when Defendant Ferrell ordered him to "tighten down," meaning to close the gap between the inmate immediately in front of him and himself. (#59-2, p.3-4; #64, p.4) The purpose of requiring inmates to tighten down is to allow enough room for each inmate to freely move his hoe but not enough room to allow an inmate to hit another inmate with the hoe. (#59-2, p.2)

Mr. Ford admits in his deposition that most squad riders require inmates to tighten down so that they are touching each other. Mr. Ford admitted that he sometimes steps out of line rather than comply with this order. (#59-1, p.15) According to Defendant Ferrell's affidavit, on May 2, 2014, she observed a large gap between Mr. Ford and the inmate in front of him. He was not keeping up with the inmates in front of him and was slowing down the inmates behind him. (#59-2, p.3-4) When Mr. Ford did not comply with her tighten-down order, Defendant Ferrell gave Mr. Ford several more orders to tighten down. (#59-1, p.28) It is undisputed that Mr. Ford did not comply with any of Defendant

---

[2] After the hearing, Mr. Ford says he talked to another inmate that said he heard Defendant Ferrell say Mr. Ford's name. Now Mr. Ford asserts that Defendant Ferrell did say his name. (#59-1, p.21-22)

Ferrell's orders to tighten down and, instead, stepped out of line. (#59-1, p.27-28; #59-2, p.4; #64, p.5) Mr. Ford explained his actions in his deposition: "[T]here was only so close that I was willing to get, you know, to where I'm uncomfortable. I'm not fixing to get up on another man's, you know what I'm saying, anus or allow the man behind me to put his penis on my anus." (#59-1, p.27)

In his response to the motion for summary judgment, Mr. Ford writes: "Ford would not comply with Ferrell's orders. Ford told the prisoner behind him who attempted to tighten down on him and comply with Ferrell's orders, I don't care what she say don't tighten down on me like that. . . ." (#64, p.5)

Defendant Ferrell, who was riding a horse, ordered Mr. Ford to cross the ditch so she could speak with him after he refused to obey orders. (#59-2, p.3-4) According to Defendant Ferrell, Mr. Ford approached her in an aggressive manner, so she ordered him to stop and back up. (#59-2, p.4) When Mr. Ford did not comply, Defendant Ferrell says that she again ordered him to stop, but he continued to approach. She un-holstered her weapon (#59-2, p.4; #64, p.5), and at that point, according to Defendant Ferrell, Mr. Ford stopped and backed up. (#59-2, p.4) Mr. Ford disputes that he approached in an aggressive manner. (#59-1, p.31)

According to Defendant Ferrell, once Mr. Ford backed away, she called for officers to take Mr. Ford to lock-up. Officers came and spoke with Mr. Ford, she says, but declined to take him to lock-up. (#59-2, p.4; #64, p.5) Defendant Ferrell states that, at that point, she counseled Mr. Ford and sent him back to work. (#59-2, p.4)

Mr. Ford disputes that Defendant Ferrell ever called officers to pick him up. (#59-1, p. 33-34; #64, p.5) Rather, Mr. Ford states, Defendant Ferrell only threatened to call for officers to take him to lock-up. (#64, p.5)

Once Mr. Ford returned to work, Defendant Ferrell testified, Mr. Ford would not follow orders to not talk.[3] (#59-2, p.4) Mr. Ford disputes this assertion, stating that he did not return to the hoe-squad line, so he had no reason to talk. (#64, p.6) According to Mr. Ford, the order to stop talking happened before he initially stepped out of line. He concedes he did not follow this order because he told the inmate in front of him and the inmate behind him, "don't tighten down on me. You're not going to tighten down on me that close. I don't care what she's saying. . . ." (#59-1, p.32) When hoe squad returned to the unit for lunch, Mr. Ford wrote three grievances against Defendant Ferrell. (#59-1, p. 41-42, 48; #64, p.6)

Later that day, Defendant Ferrell states, she overheard Mr. Ford tell another inmate that the next time Defendant Ferrell worked visitation, he was going to tell his mother to wait for Defendant Ferrell in the parking lot so that his mother could "jump on" Defendant Ferrell for not allowing him to change jobs. (#59-2, p.4) Mr. Ford disputes that this occurred. (#59-1, p. 32-33; #64, p.6)

According to Defendant Ferrell, after the squad shift, she wrote Mr. Ford a disciplinary charging him with violating the following rules: failure to obey a staff order;

---

[3] Each squad has an inmate called a "lead" and an inmate called a "tail." (#59-2, p.2) The lead and tail inmates are the only inmates allowed to talk while the squad is working. (#59-2, p.2)

6

insolence to a staff member; breaking into or disrupting a line; creating unnecessary noise; out of place assignment; and assault-attempt or threat upon a staff member. (#59-2, p.4-5) According to Defendant Ferrell, she did not know about any of the four grievances Mr. Ford had filed against her when she wrote the May 2 disciplinaries. (#59-2, p.5)

Mr. Ford disputes Defendant Ferrell's statement that she did not know about the grievances he had written and asserts that she did not write the disciplinary until two days after the incident was entered into the computer. According to Mr. Ford, Defendant Ferrell had to have known about the grievances. (#64, p.7)

At his May 13, 2014 disciplinary hearing before disciplinary officer Terrie Banister, Mr. Ford pleaded not guilty to the charges. (#59-12, p.1, #59-13, p.4) Mr. Ford was found guilty of violating all the rules except for the charge that he was out of his place of assignment. (#59-13, p.4) He was sentenced to 30 days in punitive isolation and received a reduction in his class status to Class IV. (#59-1, p. 51-52, #59-12, #59-13, p.4) Mr. Ford appealed the May 13, 2014 disciplinary hearing officer's decision all the way to the Director, who affirmed the officer's decision. (#59-13, p.4-5)

Mr. Ford initiated this lawsuit on April 28, 2017, claiming that Defendant Ferrell issued him both disciplinaries in retaliation for filing grievances against her. (#59-1, p. 52-53)

D.   Analysis

Prison officials cannot "impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional right." *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007) (citing *Goff v. Burton*, 7 F.3d 734,

7

738 (8th Cir. 1993)). Retaliatory discipline requires a showing that the inmate exercised a constitutionally protected right; that prison officials disciplined him; and that exercising the right was the motivation for the discipline. *Id.*; *Haynes v. Stephenson*, 588 F.3d 1152, 1155 (8th Cir. 2009).

The Eighth Circuit Court of Appeals has explained that retaliation must be the actual motivating factor, meaning that the disciplinary action would not have been taken "but for" the retaliatory motive. *Haynes*, 588 F.3d at 1156. "[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as some evidence upon which to base a prison disciplinary violation, if the violation is found by an impartial decision maker." *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008); see also *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994). Importantly, this standard applies even where, as here, the report is written by the same officer who is alleged to have engaged in the retaliatory conduct. *Hartsfield*, 511 F.3d at 831. Stated differently, a disciplinary conviction that is supported by some evidence "essentially checkmates" a retaliation claim. *Henderson*, 29 F.3d at 469; see also *Goff*, 7 F.3d at 738.

In addition, a disciplinary conviction cannot be deemed retaliatory if it was issued for an actual violation of prison rules. *Hartsfield*, 511 F.3d at 829; *Moots v. Lombardi*, 453 F.3d 1020, 1023 (8th Cir. 2006).

    1.    Sovereign Immunity

A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989).

Accordingly, all Mr. Ford's claims against Defendant Ferrell in her official capacity must be dismissed.

2. Disciplinary Regarding April 21, 2014 Incident

It is undisputed that Defendant Ferrell wrote this disciplinary seven days before Mr. Ford filed his first grievance against Defendant Ferrell. She obviously could not have issued the disciplinary in retaliation for writing a grievance that did not yet exist. Furthermore, Mr. Ford's disciplinary conviction was supported by Defendant Ferrell's report and decided by an impartial decision maker. Therefore, even if Defendant Ferrell had written the disciplinary after Mr. Ford filed his grievance, the retaliation claim would fail.

3. Disciplinary Regarding May 2, 2014 Incident

Even though the parties dispute some of the details about exactly what happened on May 2, 2014, Mr. Ford admits that he refused to obey Defendant Ferrell's order to tighten down and to stop talking. He nevertheless pleaded not guilty at the hearing to all disciplinary charges. None of the disputed issues of fact preclude summary judgment because the disciplinary conviction was supported by Defendant Ferrell's report and decided by an impartial decision maker, Terrie Banister. Accordingly, under Eighth Circuit law the disciplinary cannot be deemed retaliatory.

**III. Conclusion:**

The Court recommends that Defendant Ferrell's motion for summary judgment (#59) be GRANTED and that this case be DISMISSED, with prejudice.

IT IS SO ORDERED, this 18th day of July, 2018.

_____
UNITED STATES MAGISTRATE JUDGE